FRANK AREOLA V. THE STATE.

No. 1941. Decided December 14, 1898.

**1. New Trial—Continuance Where Defendant Could Have Supplied the Absent Testimony.**

On motion for a new trial the defendant can not complain of the overruling of his application for continuance where it is apparent that it was in his power to supply the proposed absent testimony by witnesses who were present on the trial, and he failed to do so.

**2. Same.**

To be sufficient, an application for continuance must be specific as to the statement of the facts expected to be proved by the absent witnesses, and is insufficient if couched in general terms only and if it consists of conclusions rather than facts.

**3. Same.**

An application for continuance will, on motion for new trial, be held rightfully overruled where, in view of the other evidence adduced, it appears that the proposed absent testimony is probably untrue.

**4. Theft—Venue—Charge.**

On a trial for theft of hogs, while the court might or could have properly given a charge upon the reasonable doubt as to whether the offense was committed within 400 yards of the county line, Held, that where the facts as to that matter were so remote and the testimony so intangible, a failure to so charge did not injuriously affect the rights of defendant, and especially where the court charged the reasonable doubt generally as to a fraudulent taking in the county of the prosecution.

**5. Hog Theft—Evidence Sufficient.**

See opinion for an epitome of facts held sufficient to support a conviction for hog theft.

APPEAL from the District Court of Angelina. Tried below before Hon. TOM C. DAVIS.

Appeal from a conviction for hog theft; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Perkins, Mathews & Harris,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of the theft of hogs, and his punishment assessed at confinement in the penitentiary for a term of two years; hence this appeal.

When the case was called for trial, he moved a continuance for the testimony of his father, Guadalupe Areola, and Mrs. Lucy Montes, residents of Nacogdoches County. By his father he expected to prove "that the hogs claimed by Mathews, and charged in the indictment to have been stolen by defendant, were in truth and in fact the property of this defendant, and that said Mathews, with others, came to defendant's house two or three times to get said hogs, and each time defendant refused to give up said hogs, and claimed they were his property, and that said hogs were never given up by defendant, and that said hogs, and

neither of them, were not delivered to said Mathews until an officer came and forcibly took them. Defendant also expects to prove by said witness that the said four head of hogs charged to have been stolen were in the range in Nacogdoches County, and were in the mark of defendant, and that the mark of said hogs had not been changed in any manner, and that defendant had a number of hogs running in the range in said Nacogdoches County. * * * Defendant expects to prove by Lucy Montes that said hog taken from the pen of defendant was in defendant's mark; that said mark on said hog was not fresh, and had not been changed; that witness had frequently seen said hog taken from the pen of defendant, and knew said hog was the property of defendant, and did not belong to anyone else; that she knew the flesh marks on said hog. That said witness lived about one mile from the defendant, and knew his hogs well." The statement of facts discloses that the defendant had, in attendance upon the trial, Bill Sykes, Mary and Ben Lazarine, and Bill Mechelli, and that each of these parties lived in the immediate neighborhood, not exceeding one-fourth of a mile from defendant; and was acquainted with his hogs; and that Mechelli was a brother-in-law of defendant. Mechelli was placed upon the stand, and testified that he had heard the defendant's dog catch a hog, went to where the occurrence took place, and found defendant tying the hog; that it was in defendant's mark, and defendant claimed it, and the mark on the hog had not been changed. This is the same hog that Mathews afterwards claimed and took from the defendant's pen. The point where he saw defendant in possession of the hog, he states, was about 800 yards from the county line; that Ben and Mary Lazarine live within one-fourth of a mile of defendant, and are acquainted with his hogs, and were present as witnesses, sworn, and placed under the rule. Sykes and the Lazarines were not placed upon the stand as witnesses.

Viewing this case from the standpoint of the motion for a new trial, and conceding the diligence to be sufficient, we do not believe that appellant can successfully urge error upon the overruling of the application for continuance. Having the three witnesses, Sykes and the Lazarines, under the rule as witnesses to prove his ownership of the hogs, it was incumbent on him to place said witnesses upon the stand. It has been held that appellant can not complain of the overruling of his application for continuance, if it was within his power to supply the absent testimony on the trial, and he failed to do so. Woolridge v. State, 13 Texas Crim. App., 443; Nolen v. State, 14 Texas Crim. App., 474. So it was within his power to have placed these three witnesses before the jury, and have them testify in regard to the facts stated in his application for continuance. Again, the statements in the application were of a very general character. They should have been more specific. The bare statement that the absent witnesses knew the hogs and that they were the property of appellant, is rather a conclusion of the witness. The application should have stated the facts on which the witnesses predicated their knowledge. In this connection it may be stated

that the only difference between the mark of appellant and that of Mathews consisted in the fact that appellant's mark included a hole in one ear. The evidence shows that the holes had been freshly cut in the ears of the hogs alleged to have been stolen, and that blood was still clotted around this fresh mark at the time of their recovery. When Mathews approached appellant with reference to the matter, he did not claim the hogs, except that they were in his mark, which was recorded in Nacogdoches County. Independent of the fact that the hogs were in his mark, and the record thereof in Nacogdoches County, appellant set up no claim. This is an uncontroverted fact. Then, in view of the overwhelming evidence on the part of the State that the marks had been changed, and the failure and refusal of appellant to put the three witnesses on the stand by whom he could have proved his ownership of the hogs, as he claimed, renders the testimony, in our judgment, at least probably untrue, if not altogether false. So, looking at this application from any standpoint, we do not believe the court erred in overruling it.

Appellant asked a charge to the effect that if the jury had a reasonable doubt that the hogs were taken in Angelina County, but may have been taken in Nacogdoches County, more than 400 yards from the county line, they would acquit. This charge was refused, and a bill of exceptions reserved. The only evidence that appellant offered upon this phase of the case was that of Mechelli, who said that he found defendant with one of the hogs in Nacogdoches County in a bottom, which hog was afterwards claimed by Mathews, and that the mark had not been changed, and defendant claimed said hog. The witness states that this was about 800 yards from the county line in Nacogdoches County. It will be noticed that this witness did not pretend to know or claim that appellant had then taken the hogs, and he disclaims the fact that the mark on the hog was changed at this place, saying that it was an old mark on the hog of which he saw appellant in possession. This was evidently not the original taking, because the mark had not then been freshly changed. There was no blood upon the ear, and said testimony excludes the idea that the defendant was then changing the mark. The other three hogs were not then seen in possession of appellant, but were found at a different place. Mathews' hogs had previously disappeared from their accustomed range in Angelina County. While the court could have given this charge, at the same time the facts are so remote and the testimony so intangible that his refusal to do so is not of a character to injuriously affect the defendant's rights. Acts 25th Leg. p. 17.

The court charged the jury in this same connection that if they believed from the evidence, beyond a reasonable doubt, that defendant, in the county of Angelina, and State of Texas, about the time charged in the indictment, etc., took these hogs, they would convict, and then gave a charge on reasonable doubt. We believe the facts required the court to give a charge on circumstantial evidence, and the charge given was a correct application of that principle.

Appellant's contention that the evidence is not sufficient to support

the conviction is not well taken. The hogs in question were raised by the alleged owner in Angelina County, near the residence of his father, until they were two years old. The hogs bore the mark of the alleged owner. Shortly after they disappeared from the range, appellant was found in actual possession of one of the hogs in Nacogdoches County, and claimed the other three running in his range in the same county, and their marks had been freshly changed; at least, a sufficient length of time had not elapsed for the entire healing of the ears. The ownership in Mathews is overwhelmingly proved. Defendant not only refused to claim the ownership in the hogs, except as above stated that they were in his mark, and his mark was recorded, but failed to place the witnesses whom he had summoned upon the stand, for the purpose of proving his ownership. The evidence, in our judgment, shows a very plain case of hog theft. The judgment is affirmed.

*Affirmed.*